## GRONEWEG & SCHOENTGEN COMPANY, Appellant, v. SAM ESTES, Respondent.

Springfield Court of Appeals, May 2, 1910.

1. **PRINCIPAL AND AGENT: Brokers: Authority of Agent Must be Shown: Instructions.** Defendant employed a firm of brokers to sell his output of canned tomatoes. Plaintiff, through the instance of the brokers, became a purchaser and a contract was signed by plaintiff and defendant for three hundred cans. In a suit for failure to deliver the tomatoes called for under the contract, the defendant claimed that he had made an offer to the brokers to deliver the tomatoes called for under the contract, which offer had been refused. *Held,* that as there was no evidence that such an offer had been communicated to the plaintiff, and no evidence that the brokers were the agents of the plaintiff in any matters concerning the fulfillment of the contract, it was error to give an instruction submitting this defense to the jury.

2. ———: **Contracts: Agent to Make Contract Not Necessarily Agent in Fulfillment Thereof.** The mere fact that an agent has authority to act as such in the negotiations leading up to a contract does not in itself establish his authority to represent the principal in matters covering the fulfillment of the contract, and to bind the principal by any subsequent act or notice to the agent with reference to the fulfillment of the contract his further authority to act as to these matters must be shown.

3. ———: **Proofs of Agent's Authority.** An agent's authority cannot be proven by the statements or acts of the agent.

4. **BROKERS: Contracts: Agent for Both Parties.** A broker may be an agent of both parties in the negotiations leading up to and in the execution of a contract.

5. **INSTRUCTIONS: Must be Based on Evidence.** Instructions must be based upon the evidence, and it is error to give instructions not based on evidence.

6. **APPELLATE PRACTICE: Change of Theory: Contract: Meeting of Minds.** An appellant must try his case in the appellate court upon the same theory it was tried upon in the court below. In a suit for damages for breach of contract the appellant for the first time in the appellate court raised the point that there was no meeting of the minds in the making of the contract. *Held,* that this question, under the evidence in this case, was one of fact for the jury, and, not having been sub- mitted to the triers of the facts, cannot be considered by the appellate court.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND REMANDED.

*Oscar B. Elam* for appellant.

(1)   A broker may be the agent of both parties to a sale for the purpose of signing a memorandum of the sale, but in all other respects he is the agent only of the party employing him. Schlessinger v. Railroad, 13 Mo. App. 471, 87 Mo. 146. (2)   Instructions should not be given where there is no evidence on which to predicate them. Gessley v. Railroad, 26 Mo. App. 161; Hinds v. Marshall, 22 Mo. App. 215; State ex rel. v. Emerson, 74 Mo. 612; Price v. Railroad, 77 Mo. 512; State v. Thompson, 83 Mo. 257; McMurray v. Martin, 26 Mo. App. 442; Chouteau v. Searcy, 8 Mo. 733. (3)   The issues cannot be changed by the instructions. The pleadings and the evidence within the issues presented by the pleadings must be the basis of all instructions. Storms v. White, 23 Mo. App. 31; Matron v. Frazier,

48 Mo. App. 302; Masman v. Bendee, 20 Mo. 576; Glass v. Gelvin, 80 Mo. 303; Iron Mt. Bank v. Murdock, 62 Mo. 73; Moffatt v. Conklin, 35 Mo. 453; Camp v. Heelan, 43 Mo. 591.

*W. P. Sullivan* and *G. A. Watson* for respondent.

STATEMENT.—Action commenced before a justice of the peace, appealed to the circuit court where it was tried at the August term, 1909, verdict returned for defendant, and plaintiff has appealed to this court. The basis of this action is the following contract:

"Sam Estes of Billings, Mo., hereby sells and the Groneweg & Schoentgen Co., of Council Bluffs, Ia., hereby buys about 300 cases, 3 lb. Standard tomatoes, pack of 1905, at 75 cents per dozen, cash less 1½ % f. o. b. Billings, Mo.

"Usual guarantee against all swells and leaks until July 1, 1906.

"Seller not liable for delivery of goods in case of destruction of cannery, and not liable for delivery of more than 75% of this order in case of inability to fill orders in full, owing to partial or complete destruction of crops by hail, drouth or any unavoidable accident or casualty.

"Shipment to be made as soon as goods are ready.

"Terms: cash less 1½% invoice, payable on arrival and inspection of goods.

"This contract is written in triplicate.

"GRONEWEG & SCHOENTGEN Co.    (Seal)

"Per John Schoentgen, V. P. & Gen. Mgr.
"Dated Kansas City, Mo., Aug. 8, 1905,

"Meinrath Brokerage Co., Brokers.

"Accepted Sam Estes (Seal)."

The negotiations which led up to the execution of this contract were conducted by correspondence between the defendant and the Meinrath Brokerage Company, Brokers of Kansas City. On July 29th, 1905, Estes wrote the brokers as follows:

"Your agent, Mr. Silver, was out in this .section of the country this summer, and said he wanted to hear from me when I got ready to sell my tomatoes, so I thought I would write you a few lines in regard to my pack of tomatoes, they are standard weight, hand packed, guaranteed to be first quality. .

"Yours truly,        SAM ESTES."

To this the brokers replied on August 2, 1905, as follows:

"We have received your letter of the 29th relative to your pack of tomatoes. We should certainly be very glad indeed to do business for you during the coming season, and should like to know just how many tomatoes you expect to pack, also should like to have you send us specimens of labels you will use, and we will see what we can do for you.

"We probably could sell your tomatoes at 75c. cash less 1½% f. o. b. Billings. Please let us know if it will be satisfactory to accept this price. From what Mr. Silver has said to us, we feel sure that any goods you may pack will certainly be of first quality, and we are very anxious to put your goods in the hands of some of our good customers.

"Yours very truly,
"MEINRATH BROKERAGE CO.,
"Per M. B."

To this letter defendant replied on August 4, 1905, as follows:

"I am in receipt of your letter, would say that I am to put up 20,000 thousand cans—will send you a sample of my labels; would say that I would furnish you what I can pack for the price you named in your letter. .

"Yours truly,
"SAM ESTES."

On August 8, 1905, the brokers wrote defendant as follows:

"Have received your letter of August 4th and have sold your tomatoes at 75 cents, cash less 1½% f. o. b. Billings, Missouri. We figure that what you will pack amounts to about 800 cases and enclose you herewith contract so reading. Please sign this contract and return to us. We have already confirmed this sale to the buyer as per your letter of the 4th.

"Will say for your information that the jobbers to whom we have sold these goods are amongst the oldest jobbers in the west and have a very fine reputation and we are sure that their treatment of you will be very satisfactory.

"You understand you are to bill their goods direct to them and ship them as soon as you have them packed.

"Yours very truly,

"MEINRATH BROKERAGE CO.,

"Per M. B."

Accompanying this letter were three copies of the contract above set out. These were signed by Estes and returned to the brokers. On August 17th, 1905 the brokers wrote Estes as follows:

"We hand you herewith contract for 800 cases tomatoes duly signed by Groneweg & Schoentgen Co. If you have any more to sell please let us know, and oblige,

"Very truly,

"MEINRATH BROKERAGE CO.,

"Per E. E. Trowbridge, Cashier."

On August 18, 1905, the defendant wrote the brokerage company a letter which was not found at the time of the trial, but which it admitted was, in substance, a refusal on the part of Estes to ratify a sale of eight hundred cases of tomatoes, and stating that he had signed the contract of sale because it called for three hundred cases, and that he would not have signed it if it had called for eight hundred cases.

The only evidence as to any correspondence direct between plaintiff and defendant is that witness Collins, the stepson of defendant, who conducted the correspondence for him, states that he wrote plaintiff a letter some time in August, and that he received a reply thereto. This reply had been lost, and could not be produced at the trial, but we infer from the other testimony of this witness that this letter of plaintiff's notified the defendant that they would expect the three hundred cases. We find these questions and answers immediately following the questions and answers relating to the failure to produce the letter.

"Q. What is your recollection as to the letter the plaintiff wrote you, asking you to ship the tomatoes? A. They just wrote they would expect the 300 cases. Q. That is what you agreed to deliver then? A. Yes, sir, or 75% of it."

After this time several letters were written by the brokers to the defendant in which they insisted that defendant had authorized them to sell eight hundred cases—that they had sold eight hundred cases and insisted that defendant execute the contract covering eight hundred cases. There is no evidence to connect the plaintiff in any way with any of these letters. On October 26. 1905, the brokers wrote defendant as follows:

"We have received your letter of the 24th, and note that you can now give us 225 cases of tomatoes.

"When the writer talked with Mr. Estes from Billings, he stated that he would furnish 300 cases, and we have settled with the buyer accordingly, and will, therefore, expect you to deliver 300 cases of tomatoes.

"Yours very truly,

"MEINRATH BROKERAGE CO.,

"Per N. B."

On November 21st, 1905, the brokers again wrote Estes as follows:

"Messrs. Groneweg & Schoentgen are asking about the shipment of their tomatoes.

"Won't you kindly advise us if you are not now preparing to forward them 300 cases in accordance with correspondence that has passed between us, so that further correspondence may not be necessary, and oblige.

"Yours truly,
"MEINRATH BROKERAGE CO.,
"Per J. M."

On November 28, 1905, the brokers wrote Estes as follows:

"Since we received your letter of October 24th, we have had no further advices from you with reference to tomatoes for Groneweg & Schoentgen, Council Bluffs, Iowa.

"It does seem as though, regardless of the circumstances connected with the trade, that further correspondence in this matter is useless, and we, therefore, authorize you to ship Groneweg & Schoentgen promptly on receipt of this letter 225 cases of tomatoes, which they will accept in full settlement of their contract, providing you will make immediate shipment.

"Please let us have a prompt reply advising that the goods have been forwarded, and oblige.

"Yours truly,
"MEINRATH BROKERAGE CO.,
"Per J. M."

On the 6th of December, 1905, the brokers again wrote Estes insisting that he ship immediately the 225 cases. The tomatoes were not shipped, but defendant sold what tomatoes he had to another party, and plaintiff afterwards brought this suit. On the trial in the circuit court, at the instance of plaintiff, the court gave the following instruction:

"The court instructs the jury that if the jury believe and find from the evidence that plaintiff, Groneweg & Schoentgen Company, and defendant, Sam Estes, made the contract offered in evidence on the part of plaintiff, dated Kansas City, Mo., August 8, 1905, and, thereafter, defendant, Sam Estes, failed to deliver to plaintiff, Groneweg & Schoentgen Company, the tomatoes mentioned in said contract, you will find the issue for the plaintiff."

Also instructions as to the measure of damages, and in relation to the time of delivery as provided for in the contract. On behalf of defendant the court gave the following instruction:

"If you find and believe from the evidence that the defendant agreed and contracted with the plaintiff to deliver to plaintiff 300 cases of tomatoes f. o. b. Billings, Mo., at 75 cents per dozen, less $1\frac{1}{2}\%$ brokerage, and that plaintiff was unable on account of unavoidable casualty to fill said order in full, and that he offered to deliver to plaintiff 225 cases of tomatoes as per said contract provided, and that plaintiff was demanding shipment of a greater number of cases and failed and refused to accept defendant's offer within a reasonable time, then you should find the issues for defendant."

These were all the instructions given to the jury. The plaintiff asked the court to instruct the jury that if defendant first employed the Meinrath Brokerage Company, and if the brokers negotiated the transaction upon which the suit is based, then they were the agents of defendant, and plaintiff is not responsible for any conduct or correspondence of the brokers.

COX, J.—Appellant contends that the contract was complete when Estes signed it, and that all of the correspondence between defendant and the brokers, which indicated a misunderstanding as to what the contract really was, the brokers insisting that it was for eight hundred cases, and Estes that it was only for

three hundred cases, was not binding upon plaintiff; and, further, that the testimony upon which defendant relies to show that he had offered to furnish seventy-five per cent of the three hundred cases did not show that he made the offer to the plaintiff; that he only made it to the brokers, and that they were not repre senting the plaintiff at that time.

The defendant insists in this court that the brokers were the agents of plaintiff through the entire transaction. That plaintiff is bound by the letters written by the brokers and that these letters show that the minds of the parties did not meet, and, hence, no contract was ever executed between them, and that they further show that notwithstanding the fact that there was no contract, defendant had offered to furnish seventy-five per cent as he was bound to do under the contract, and that for both of these reasons plaintiff cannot recover.

It occurs to us that as the evidence appears in this case, as preserved in this record, there can be no question that the contract was complete when Estes signed it and mailed it to the brokers, and further, defendant afterwards recognized the existence of this contract by writing to the brokers that he was ready to furnish 225 cases under it. A broker may be the agent of both parties in the execution of a contract, and frequently is, and, in this case, it will be noticed that in the first instance the defendant employed these brokers to sell the product of his tomato crop; that he received notice from the brokers that the sale had been made. The brokers sent him a contract which had been previously signed by the purchaser, and upon receipt of this contract the defendant signed it, and returned it to them, and, we think, it clear that this constituted a delivery. It seems that this contract was forwarded to plaintiff, though when or how does not appear, but it does appear that in August they wrote defendant that they were expecting him to ship them three hundred cases. It seems

that the defendant contended all the time that, under
the circumstances, he was only required to furnish sev-
enty-five per cent of the three hundred cases, and he
rested his defense in this case in the trial court upon
the one question that he had offered to furnish the
seventy-five per cent which his contract called for, and
that the plaintiff had refused to accept it.  For his
proof of this fact he relies upon the fact that he made
the offer to the brokers, but there is no evidence to
show that the offer was communicated by the brokers
to the plaintiff, except what might be inferred from the
statement  of the brokers themselves in letters written
by them to the defendant.  This is not sufficient.  An
agent's authority cannot be proven by the statements
or acts of the agent.  While a broker may be the agent
of both parties in the negotiations leading up to the
contract, yet when the contract is completed, signed
and delivered as we hold it was in this case when Estes
signed it and mailed it to the brokers, then the agency
of the broker as to both parties ceases, and if it is
sought to bind either party by any action of the broker,
after the execution of the contract, it must be shown
that he had authority to act.  There is an entire absence
of evidence in this case that the brokers had any au-
thority to represent the plaintiff in the negotiations
about the fulfillment of the contract on the basis of
a seventy-five per cent delivery, and for this reason the
instruction given to the jury, which submitted that issue
to them, was erroneous, for it is familiar law that in-
structions must be based upon the evidence, and it is
error to give instructions not based upon the evidence.

Counsel for defendant contend in this court that
the evidence in this case discloses that the minds of
these parties did not meet, and, for that reason, no con-
tract was ever executed, and, hence, plaintiff cannot
recover.  Holding, as we do, that the contract was com-
plete when signed and mailed by Estes to the brokers,
this position of defendant's is untenable.  It could only

be supported by showing that when the contract which he returned plaintiff was delivered to plaintiff, that he refused to accept it and insisted that he had purchased eight hundred cases, and as there was no evidence to show that the brokers had any authority to represent the plaintiff in the letters that were written by them, after the signing of the contract, there is no basis on the record in this case for the contention that no contract was executed. Further, that issue was not submitted to the jury. The case was not tried upon that theory in the circuit court, and it is familiar law that an appellant must try his case in the appellate court upon the same theory that it was tried in the court below, especially is this true where the issue is one of fact, and that issue was not submitted to the jury. The jury are the triers of the facts, and, in this case, the question whether or not the minds of these parties met, and whether or not there was, in fact, a contract executed, was purely a question of fact, hence, the court below had no authority to determine it, neither has the court here any authority, hence, that question, on the record in this case, is not before us for our consideration.

For the error noted the judgment will be reversed and the cause remanded. All concur.